456 A.2d 1377

**N.H. WEIDNER, INC., a Pennsylvania Corporation**

v.

**Jack BERMAN and Joanne D. Berman, his wife.**

**Appeal of Joanne D. BERMAN.**

Superior Court of Pennsylvania.

Argued May 20, 1982.

Filed Feb. 18, 1983.

Petition for Allowance of Appeal Denied May 31, 1983.

Stephen J. Harris, Pittsburgh, for appellant.

Steven H. Wyckoff, Pittsburgh, for appellee.

Before ROWLEY, MONTEMURO and VAN der VOORT, JJ.

MONTEMURO, Judge:

This is an appeal from a denial to open a default judgment, and subsequent denial of appellant's motion for rehearing, in the Court of Common Pleas, Allegheny County.

Mr. Jack Berman and Mrs. Joanne D. Berman, his wife, as tenants, entered into a lease with the lessor, N.H. Weidner, Inc., in 1963. The lease contained a tax escalation clause which required the tenants to pay all real estate tax increases on the premises. The present suit was commenced on February 7, 1979, when appellee, Weidner, Inc., filed a complaint in assumpsit, alleging that the tenants were in default due to their failure to pay tax increases for the period from 1967–1978.

Separate appearances were subsequently entered on behalf of both Jack Berman and Joanne D. Berman. In addition, preliminary objections were filed by both. An order of court was issued on October 16, 1979, dismissing

certain of the tenants' preliminary objections and ordering appellee to file a more specific complaint. An amended complaint was filed on October 23, 1979. It was also met with preliminary objections filed by both tenants. These preliminary objections were dismissed by the court and both tenants were ordered to file an answer within twenty days of the December 10, 1979 order. This time was subsequently extended to January 22, 1980 for tenant Jack Berman, who filed his answer on January 21, 1980. Jack Berman committed suicide on March 27, 1980. His personal representative is not a party to the present appeal as no default was entered against him; only Joanne D. Berman is appealing here.

With reference to appellant Joanne D. Berman's failure to file an answer, she alleged that it was informally agreed upon by respective counsel that she need not file until sometime after all pleadings between appellee and Jack Berman were completed. She cited no evidence in the record to support such allegation. Appellee denied that there was ever an agreement to "indefinitely" extend the time for appellant's answer. Instead, appellee alleged that repeated telephone requests, and three written requests, one by blind post script, were made for appellant's answer. Finally, on August 20, 1980, counsel for appellee sent a letter to both Mr. Berman's counsel and counsel for appellant. The relevant portions of which are set forth below:

> To date, I have not received an answer on behalf of Mrs. Berman. When I last spoke to Mr. Brown concerning the fact that an answer had not been filed he indicated to me that there was a possibility that he would be filing a motion to withdraw as Mrs. Berman's counsel. To date I have not received a conformation of Mr. Brown's intentions, nor have I received any word from Mr. Levin. I would appreciate it if you gentlemen would resolve the issues of representation concerning the above noted case. Should I note (sic) hear from either of you within the next two weeks, I will assume that I should feel free to enter a default judgment against Mrs. Berman for failure to file

an answer, and will then proceed to amend the caption of this case accordingly. Obviously, I do not wish to take advantage of any confusion which has been created by the death of Mr. Berman. However, I must protect my client's interests in connection with this suit. I look forward to your cooperation. (R. 76a, 77a)

Without further notice, a default judgment was entered against appellant on September 8, 1980. On September 16, 1980, appellant filed her petition to open the default judgment. On September 24, 1981, this petition was denied. The lower court wrote a very brief opinion citing no procedural rules. Specifically, it found that there was no valid excuse for appellant's long delay in the face of repeated requests for action. On October 13, 1981, a motion for rehearing was also denied. Appellant then filed this appeal.

■ Whether to strike or open a default judgment in assumpsit is left to the sound discretion of the trial court; its decision will not be reversed absent a manifest abuse of discretion or error of law. *Giallorenzo v. American Druggists' Insurance Company*, 301 Pa.Super. 294, 447 A.2d 974 (1982); *Butterbaugh v. Westons Shopper City, Inc.*, 300 Pa.Super. 331, 446 A.2d 641 (1982); *Paules v. Sminkey*, 290 Pa.Super. 223, 434 A.2d 724 (1981).

■ Regarding the applicable law, Pa.R.C.P. 237.1, effective February 1, 1980, sets forth notice requirements for the entry of default judgments. The full test of the rule is set forth below:

### Rule 237.1. Notice of Praecipe for Entry of Default Judgment

(a) No judgment by default shall be entered by the prothonotary unless the praecipe for entry includes a certification that a written notice of intention to file the praecipe was mailed or delivered to the party against whom judgment is to be entered and to his attorney of record, if any, after the default occurred and at least ten days prior to the date of the filing of the praecipe. If a

written agreement for an extension of time specifies a time within which the required action must be taken and a default occurs thereafter, judgment by default may be entered by the prothonotary without prior notice under this rule. A copy of the notice or agreement shall be attached to the praecipe.

(b) This rule does not apply to (1) a judgment entered pursuant to an order of court or rule to show cause or (2) any action subject to the provisions of Act No. 6 of 1974, P.L. 13, 41 P.S. § 101 et seq.

*Note: See the provisions for special notice of Section 403 of Act No. 6 of 1974 and Rule 2984(2) before any action may be brought respecting a residential mortgage.*

(c) The notice required by subdivision (a) shall be substantially in the following form:

(CAPTION)

TO:  ...........................
      (Defendant)
Date of Notice:  ....................

IMPORTANT NOTICE

YOU ARE IN DEFAULT BECAUSE YOU HAVE FAILED TO TAKE ACTION REQUIRED OF YOU IN THIS CASE, UNLESS YOU ACT WITHIN TEN DAYS FROM THE DATE OF THIS NOTICE, A JUDGMENT MAY BE ENTERED AGAINST YOU WITHOUT A HEARING AND YOU MAY LOSE YOUR PROPERTY OR OTHER IMPORTANT RIGHTS. YOU SHOULD TAKE THIS NOTICE TO A LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE FOLLOWING OFFICE TO FIND OUT WHERE YOU CAN GET LEGAL HELP:

...........................
  (Name of Office)

..........................
(Address of Office)

..........................
(Telephone Number)

..........................
(Signature of Plaintiff
or Attorney

..........................
(Address)

Pa.R.C.P. 237.1

The language of the rule is mandatory in nature, and has been expressly held to be so in a recent decision. *Giallorenzo, supra.* Therefore, we must determine at the outset whether the rule was properly complied with here.

Appellant argues, and appellee essentially concedes, that appellee's counsel here did not send notification substantially in the form set forth in subsection (c). Similarly, appellant argues, and appellee concedes, that notice here was sent only to counsel, not to both appellant and her counsel as required by subsection (a) of the rule.

The precise issue then is whether appellee took appropriate action to fall within the exception found in the latter portion of subsection (a), which contemplates written agreements for an extension of time. Judgment by default may be entered by the prothonotary without prior notice in this circumstance.

Appellee here argues that the letter of August 20, 1980, fits within the definition of a "written agreement for an extension of time" for purposes of Pa.R.C.P. 237.1(a). Appellant on the other hand characterizes this letter as an "ambiguous unilateral act by one party."

At the time this case was argued, the issue here was one of first impression. Recently, however, this court decided the case of *Giallorenzo, supra.* We believe that it controls our disposition here. As it is factually similar to the case at bar, it will be discussed at length.

*Giallorenzo* was an appeal from an order striking a default judgment in an assumpsit action seeking recovery under a policy of fire insurance.

Suit was commenced in June 1981 when plaintiffs filed their complaint. One month later counsel for defendant entered an appearance by mailing a praecipe to the county prothonotary. A copy of the letter forwarding the praecipe to the prothonotary was mailed to plaintiffs' counsel and contained a blind post script requesting twenty additional days in which to review the complaint.

When plaintiffs' counsel received the copy of this letter on July 15, 1981, he responded acknowledging receipt of the copy, and indicated that his clients needed the money involved here immediately.

On September 9, 1981, nearly three months after the complaint had been filed, and nearly two months after defense counsel had requested twenty additional days in which to review the complaint, plaintiffs' counsel again wrote to defense counsel, stating that:

> Because of the pressing nature of this matter, you are hereby requested to file an appropriate answer within ten (10) days from the date of this letter before I enter a dafault judgment.

*Giallorenzo, supra,* 301 Pa.Super. at 296, 447 A.2d at 975.

Thereafter, without further notice, on September 22, 1981, plaintiffs' counsel filed his praecipe for default judgment. Accompanying the praecipe were copies of the letter of defendant's counsel requesting twenty additional days, and the letters of plaintiffs' counsel mailed to defendant's counsel on July 15, 1981, and September 9, 1981.

Plaintiffs' counsel conceded that the letter of September 9, 1981, requesting defense counsel to file an answer within ten days or suffer a default did not constitute the notice required under Rule 237.1(a). What plaintiffs did seek to argue however was that the correspondence indicated an

"informal agreement" for an extension of time. The court rejected this argument and stated:

> ... While we can accept the suggestion that the blind post script contained at the bottom of defense counsel's letter to the Prothonotary in July 1981 constituted a request for an extension of time, we cannot conclude that the second letter of plaintiffs' counsel dated September 9, 1981 perfected the kind of *written agreement* intended by the Rule. Prior to the letter of September 9, 1981, no "agreement" between counsel existed. We agree with the argument advanced on behalf of the defendant-appellee that the plaintiffs attempted to do by counsel's letter of September 9th that which Rule 237.1 was precisely formulated to prevent. The record discloses that there was simply no "written agreement" reached between counsel specifying a time within which the answer was to have been filed, with a default occurring thereafter.
>
> If the plaintiffs had desired to place the matter in a posture to permit a proper praecipe for default judgment, they need merely to have issued the notice required by Rule 237.1(a), in a form substantially as set forth in Rule 237.1(c), and either mailed or delivered it to both the defendant and its counsel of record. Plaintiffs chose not to do so, however, and sent the letter of September 9, 1981 which simply follows the practice prior to the new rule. (Emphasis in original)

*Giallorenzo, supra,* 301 Pa.Superior, at 298, 447 A.2d 975.

Applying the court's rationale in *Giallorenzo* to the case *subjudice,* clearly there was no "written agreement." Just as in *Giallorenzo,* what we have here is a letter to a party, whose responsive pleading is past due, informing that party that a default will be entered if no answer is filed within a given time period.

The explanatory note to Rule 237.1 supports our determination that the letter of August 20, 1980, does not constitute a written agreement. The note says the following in regard to "Agreements for Extension."

A written agreement of extension need not be formal. An *exchange* of letters between counsel will suffice. But any agreement should be sufficiently specific to avoid argument over its terms. Many decisions deal with ambiguous extension agreements or alleged modifications of written agreements. (Emphasis ours)

Explanatory note—1979. Pa.R.C.P. 237.1. Here, appellee is arguing, solely on the basis of the letter of August 20, 1980, that there was an agreement. He does not allege that there was any exchange of letters specifying a time for answer, and the record does not indicate that any written exchange on this matter in fact took place. All that appears are requests for an answer from appellant.

We repeat the advice of the court in *Giallorenzo*. Since appellant's answer here was long overdue, appellee could have had his default judgment had he issued the notice required by rule 237.1(a), in a form substantially like that set forth in subsection (c), and mailed or delivered it to both appellant and her counsel of record.

Even accepting the finding of the lower court that appellant offered no valid excuse for her failure to answer in a timely manner, we must still reverse. Here, as in *Giallorenzo*, the appellee's actions simply followed the practice prior to the new rule.

As the first sentence of the explanatory note accompanying the Pa.R.C.P. 237.1 indicates, it was promulgated precisely because of a concern over, "the increasing number of petitions being filed in the common pleas courts throughout the Commonwealth to open default judgments and the ensuing appeals..." Pa.R.C.P. 237.1, Explanatory Note—1979. Had our Supreme Court been satisfied with practices prior to the rule, there would have been no need to adopt it. We will not attempt to circumvent by judicial decision here, the determination by our Supreme Court of the necessity for such a rule, which very specifically dictates the procedures to be followed.

In addition, we are satisfied that the strict and perhaps somewhat narrow interpretation given to Pa.R.C.P. 237.1 by this court both today and in *Giallorenzo, supra,* is consistent with certain broader principles regarding default judgments which have already been enunciated.

Foremost, is the often stated principle that "snap judgments" taken without notice are strongly disfavored by the courts. *Kraynick v. Hertz,* 443 Pa. 105, 277 A.2d 144 (1971); *Beausang v. Bernotas,* 296 Pa.Super. 335, 442 A.2d 796 (1982). The policy behind permitting defaults was stated by the court in *Kraynick:*

> The true purpose of the entry of a default is to speed the cause thereby preventing a dilatory or procrastinating defendant from impeding the plaintiff in the establishment of his claim. It is not procedure intended to furnish an advantage to the plaintiff so that a defense may be defeated or a judgment reached without the difficulty that arises from a contest by the defendant.

*Kraynick, supra* 443 Pa. at 111, 277 A.2d at 147.

Furthermore, the courts have always required strict compliance with Pa.R.C.P. 1037, the general section authorizing Judgment Upon Default or Admission. *Franklin Interiors, Inc., v. Browns Lane Inc.,* 227 Pa.Super. 252, 323 A.2d 226 (1974); *Phillips v. Evans,* 164 Pa.Super. 410, 65 A.2d 423 (1949).

As we stated at the outset, the threshold question is whether the default was properly entered in accordance with the mandatory requirements of Pa.R.C.P. 237.1. In view of our determination that it was not, we need not consider the equitable arguments advanced by the parties. The default judgment here should not have been entered, and the lower court committed an error of law when it refused to open the judgment.

Accordingly, we reverse the decision of the lower court, and remand with instructions that the judgment be opened. This court does not retain jurisdiction.